# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| **GUILLERMO ROBLES**, an individual, | ) ) ) | **Case No.** 1:17-cv-01302 |
| Plaintiff, | ) ) | |
| vs. | ) ) | **Trial by Jury Demanded** |
| **KRAFT FOODS GROUP, INC**., a Virginia corporation resident and doing business in Illinois, | ) ) ) ) | |
| Defendant. | ) ) | |

## COMPLAINT FOR INJUNCTIVE RELIEF,
## CIVIL MONETARY PENALTIES, AND OTHER EQUITABLE RELIEF

Plaintiff, Guillermo Robles, ("Plaintiff"), by and through his attorneys, for his complaint against Defendant, Kraft Foods Groups, Inc., states as follows:

## INTRODUCTION

1.    Plaintiff is a blind and visually-impaired person who requires screen-reading software to read website content using his computer and on his iPhone.

2.    Plaintiff uses the terms "blind" or "visually-impaired" to refer to all people with visual impairments who meet the legal definition of blindness in that they have a visual acuity with correction of less than or equal to 20 x 200.  Some

blind people who meet this definition have limited vision. Others have no vision.

3.　　Plaintiff brings this civil rights action against Kraft KRAFT FOOD GROUPS, INC. ("Kraft" or "Kraft") for its failure to design, construct, maintain, and operate its websites, [Gevalia.com](Gevalia.com) and Gevalia.com/on/demandware.store/ Sites-Gevalia/default/mHome-Show (the "websites" or "Kraft's websites") to be fully accessible to and independently usable by Plaintiff and other blind or visually-impaired people.

4.　　Kraft's denial of full and equal access to its websites, and therefore denial of its products and services offered thereby is a violation of Plaintiff's rights under the Americans with Disabilities Act ("ADA") and California's Unruh Civil Rights Act ("UCRA").

5.　　Because Kraft's websites, Gevalia.com and its mobile website, Gevalia.com/on/demandware.store/Sites-Gevalia/default/mHome-Show, are not fully and equally accessible to blind and visually-impaired consumers in violation of the ADA, Plaintiff seeks a permanent injunction to cause a change in Kraft's corporate policies, practices, and procedures so that Kraft's full and mobile websites will become and remain accessible to blind and visually-impaired consumers, including Plaintiff.

## JURISDICTION AND VENUE

6.      This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12181, as Plaintiff's claims arise under Title III of the ADA, 42 U.S.C. § 12181, *et seq*.

7.      This Court has supplemental jurisdiction over Plaintiff's non-federal claims pursuant to 28 U.S.C. § 1367, because Plaintiff's UCRA claims are so related to Plaintiff's federal ADA claims, they form part of the same case or controversy under Article III of the United States Constitution

8.      This Court has personal jurisdiction over Kraft because it is deemed a resident of the State of Illinois and it conducts and continues to conduct a substantial and significant amount of business in the State of Illinois.

9.      Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. §1391(b)(1) because Kraft resides in this District and this Court has personal jurisdiction over Kraft.

## PARTIES

10.      Plaintiff, at all times relevant and as alleged herein, is a resident of California, County of Los Angeles. Plaintiff is also blind, visually-impaired, a handicapped person, and a member of a protected class of individuals under the ADA, pursuant to 42 U.S.C. § 12102(1)-(2), and the regulations implementing the

ADA, set forth at 28 C.F.R. §§ 36.101 *et seq*.

11.     Kraft is one of North America's largest consumer packaged food and beverage companies, and its headquarters are located in Northfield, Illinois.

12.     Kraft offers its Gevalia brand of coffee for sale on the full website, Gevalia.com, and its mobile website, Gevalia.com/on/demandware.store/ Sites-Gevalia /default/mHome-Show, which provides to the public important goods and services.

13.     Kraft's websites provide consumers with access to an array of goods and services including product descriptions, online sales for coffee and coffeemakers, exclusive online pricing offers, free auto-delivery offers, locations where consumers can physically buy Gevalia coffee products, and many other benefits related to these goods and services.

14.     Kraft's website is a public accommodation within the definition of Title III of the ADA, 42 U.S.C. § 12181(7) because the website Gevalia.com  is a part of a "sales or rental establishment," and a "service establishment."

15.     Kraft has been and is committing the acts or omissions alleged herein in Los Angeles County of the State of California which caused injury, and violated rights prescribed by the ADA and UCRA, to Plaintiff and to other blind and other visually impaired-consumers. A substantial part of the acts and omissions giving

rise to Plaintiff's claims occurred in California. Specifically, on several separate occasions, Plaintiff has been denied the full use and enjoyment of the facilities, goods, and services of Kraft's websites in Los Angeles County. The access barriers Plaintiff encountered on Kraft's websites have caused a denial of Plaintiff's independent, full and equal access multiple times in the past, and now deter Plaintiff on a regular basis from accessing Kraft's websites.

## THE AMERICANS WITH DISABILITIES ACT AND THE INTERNET

16.     The Internet has become a significant source of information, a portal, and a tool for conducting business, doing everyday activities such as shopping, learning, banking, researching, as well as many other activities for sighted, blind and visually-impaired persons alike.

17.     In today's tech-savvy world, blind and visually-impaired people have the ability to use computers and smartphones to access websites and other digital content using keyboards or smartphone screens in conjunction with screen access software that vocalizes the visual information found on a computer or smartphone screen or the content can be read by a user on a refreshable Braille display. This technology is known as screen-reading software. Screen-reading software programs are commonly referred to as "screen-readers."

18.     Screen-reading software is currently the only method a blind or

visually-impaired person may independently access the internet, websites and other digital content.

19.     Unless websites are designed to be accessible using screen-reading software, blind and visually-impaired persons, such as Plaintiff, are unable to fully and equally access websites, and the information, products, and services contained thereon.

20.     Blind and visually-impaired users of Windows operating system-enabled computers and devices have several screen-reading software programs available to them.  Some of these programs are available for purchase and other programs are available without the user having to purchase the program separately.

21.     Job Access With Speech, otherwise known as "JAWS," is currently the most popular, separately purchased and downloaded screen-reading software program available for a Windows computer.

22.     For blind and visually-impaired users of Apple operating system-enabled computers and devices, the screen-reading software available and built into all Apple products is VoiceOver. Apple's devices, including the iPhone, have the VoiceOver program integrated into their iOS operating system for use by blind and visually-impaired users, including Plaintiff.

23.    For screen-reading software to function, the information on a website must be capable of being rendered into text so it may be read back to the user or readable on a refreshable Braille display, so a user may navigate the websites and the various web pages within a website using their keyboard or by moving their fingers over their smartphone's screen.

24.    If the website content is not capable of being rendered into text, the blind or visually-impaired user is unable to access and navigate the same content on a website that is available to sighted users.

25.    The international website standards organization, the World Wide Web Consortium, known throughout the world as W3C, has published Success Criteria for version 2.0 of the Web Content Accessibility Guidelines ("WCAG 2.0" hereinafter).

26.    WCAG 2.0 are well-established guidelines for making websites accessible to blind and visually-impaired people.

27.    WCAG 2.0 is almost universally followed by most large business entities who want to ensure the websites they offer to the public are accessible to individuals who use screen-reading software. Though WCAG 2.0 has not been formally adopted as the standard for making websites accessible, it is one of, if not the most, valuable resource for companies to operate, maintain, and provide

commercial websites that are accessible to the public, equally, as required by the ADA.

28.     Some of the Success Criteria contained in WCAG 2.0 is also assistive for businesses to make mobile websites equally accessible to blind and visually-impaired users of the iPhone and other operating systems. Apple, the developer and manufacturer of iPhones, also provide iOS accessibility guidelines for its mobile devices like the iPhone, which assist iOS developers to make mobile websites accessible to blind and visually-impaired individuals.  Apple's guidelines are available online at:

https://developer.apple.com/library/ios/documentation/UserExperience/Conceptual/iPhoneAccessibility/Introduction/Introduction.html.

29.     Inaccessible or otherwise non-compliant websites pose significant access barriers to blind and visually-impaired persons.

30.     Common barriers encountered by blind and visually impaired persons include, but are not limited to, the following:

a.     A text equivalent for every non-text element is not provided;

b.     Title frames with text are not provided for identification and navigation;

c.     Equivalent text is not provided when using scripts;

d.  Forms with the same information and functionality as for sighted persons are not provided;

e.  Information about the meaning and structure of content is not conveyed by more than the visual presentation of content;

f.  Text cannot be resized without assistive technology up to 200 percent without loss of content or functionality;

g.  If the content enforces a time limit, the user is not able to extend, adjust or disable it;

h.  Web pages do not have titles that describe the topic or purpose;

i.  The purpose of each link cannot be determined from the link text alone or from the link text and its programmatically determined link context;

j.  One or more keyboard operable user interface lacks a mode of operation where the keyboard focus indicator is discernible;

k.  The default human language of each web page cannot be programmatically determined;

l.  When a component receives focus, it may initiate a change in context;

m.  Changing the setting of a user interface component may

automatically cause a change of context where the user has not been advised before using the component;

n.   Labels or instructions are not provided when content requires user input;

o.   In content which is implemented by using markup languages, elements do not have complete start and end tags, elements are not nested according to their specifications, elements may contain duplicate attributes and/or any IDs are not unique;

p.   Inaccessible Portable Document Format (PDFs); and,

q.   The name and role of all User Interface elements cannot be programmatically determined; items that can be set by the user cannot be programmatically set; and/or notification of changes to these items is not available to user agents, including screen-reading software.

## KRAFT'S FAILURE TO MAKE ITS WEBSITES ACCESSIBLE AND PLAINTIFF'S ATTEMPTS TO ACCESS KRAFT'S WEBSITES

31.   Kraft offers the commercial websites, Gevalia.com and its mobile website, Gevalia.com/on/demandware.store/Sites-Gevalia/default/mHome-Show, to the public.

32. These websites offer features which should allow all consumers to access the goods and services which Kraft offers and should allow consumers to locate physical locations where Kraft's products may be purchased by consumers.

33. The goods and services offered by Kraft include, but are not limited to the following, which should allow all consumers to: learn about Gevalia coffee products, buy coffee and coffeemakers online, access special online pricing offers, arrange auto-delivery options, find locations where to physically purchase Gevalia coffee products, and many other benefits related to these goods and services.

34. Based on information and belief, it is Kraft's policy and practice to deny Plaintiff, along with other blind or visually-impaired users, access to Kraft's websites, and to therefore specifically deny the goods and services that are offered on its websites and available at retail stores.

35. Due to Kraft's failure and refusal to remove access barriers to its websites, Plaintiff and visually-impaired persons have been and are still being denied equal access to the numerous goods, services, and benefits offered to the public through Gevalia.com and its mobile website, Gevalia.com/on/demandware.store/Sites-Gevalia/default/mHome-Show.

36. Plaintiff cannot use a computer without the assistance of screen-reading software.

11

37. However, Plaintiff is a proficient user of the JAWS screen-reader and uses it to access the internet.

38. Plaintiff has visited Gevalia.com on several separate occasions using the JAWS screen-reader.

39. Plaintiff regularly and proficiently uses an iPhone and its built-in screen reader, VoiceOver, to access online content found on websites and mobile applications.

40. Plaintiff has visited Gevalia.com/on/demandware.store/Sites-Gevalia/default/mHome-Show on several separate occasions using the VoiceOver software on his iPhone.

41. During several separate visits to Kraft's websites, Plaintiff encountered multiple access barriers which denied Plaintiff full and equal access to the facilities, goods and services offered to the public and made available to the public on Kraft's websites.

42. Due to the widespread access barriers Plaintiff encountered on Kraft's websites, Plaintiff has been deterred, on a regular basis, from accessing Kraft's websites and is prevented from completing an online transaction with Kraft.

43. Similarly, the access barriers Plaintiff encountered on Kraft's websites have deterred Plaintiff from visiting or locating brick-and-mortar stores to purchase

Kraft's Gevalia brand coffee products.

44.    While attempting to navigate Gevalia.com and Gevalia.com /on/demandware.store/Sites-Gevalia/default/mHome-Show, Plaintiff encountered multiple accessibility barriers for blind or visually-impaired people that include, but are not limited to:

   a.   *Lack of Alternative Text* ("alt-text"), or a text equivalent. Alt-text is invisible code embedded beneath an image on a website. For an image to be accessible using a screen-reader, it requires that alt-text be coded with each image so that screen-reading software can speak the alt-text where a sighted user sees the image. Alt-text does not change the visual presentation, but instead when the user has reached the image by, pressing the tab or arrow keys, a text box appears for the screen-reader to vocalize the alt-text coded for a particular image. The lack of appropriate alt-text on images prevents screen readers from accurately vocalizing a description of the images. As a result, visually-impaired Kraft's customers or potential customers, are unable to determine what is on the website, browse, find locations where Kraft's products are sold, obtain information and access to Kraft's programs and specials, or make any purchases;

     b.    *Empty* *Links* *That* *Contain* *No* *Text* causing the function or purpose of the link to not be presented to the user. This can introduce confusion for keyboard and screen-reader users;

     c.    *Redundant* *Links* where adjacent links go to the same URL address which results in additional navigation and repetition for keyboard and screen-reader users; and

     d.    *Linked* *Images* *Missing* *Alt-text*, which causes problems if an image within a link contains no text and that image does not have alt-text. A screen reader then has no content to present the user as to the function of the link, including information contained in PDFs.

45.    Most recently in 2017, Plaintiff attempted to do business with Kraft on Gevalia.com and Gevalia.com/on/demandware.store/Sites-Gevalia/default/mHome-Show and Plaintiff encountered barriers to access on both websites.

46.    Despite past and recent attempts to do business with Kraft on its websites, the numerous access barriers contained on the websites and encountered by Plaintiff, have denied Plaintiff full and equal access to Kraft's websites.

47.    Plaintiff, as a result of the barriers on Kraft's websites, continues to be deterred on a regular basis from accessing Kraft's websites.

48.    Due to the inaccessibility of Gevalia.com and Gevalia.com/on/

demandware.store/Sites-Gevalia/default/mHome-Show, blind and visually -impaired consumers, such as Plaintiff, who need screen-readers, cannot fully and equally use or enjoy the facilities, goods, and services Kraft offers to the public on its websites.

49. The access barriers Plaintiff encountered on Kraft's websites have caused a denial of Plaintiff's full and equal access multiple times in the past, and now deter Plaintiff on a regular basis from accessing Kraft's websites.

50. In addition, the access barriers Plaintiff encountered on Kraft's websites have deterred Plaintiff from visiting physical retail stores that offer Kraft's Gevalia brand coffee and other related products.

51. If Gevalia.com was equally accessible to all, Plaintiff could independently navigate Kraft's websites and complete a desired transaction as sighted individuals do.

52. Having made many attempts to use Kraft's websites, Plaintiff has actual knowledge of the access barriers that make these services inaccessible and independently unusable by blind and visually-impaired people.

53. Because maintaining and providing websites that are fully and equally accessible to all consumers, using guidance of the Success Criteria outlined in the WCAG 2.0 Guidelines, would provide Plaintiff and other visually-impaired

consumers with full and equal access to Gevalia.com and Gevalia.com/on/demandware.store/Sites-Gevalia/default/mHome-Show, Plaintiff alleges that Kraft has engaged in acts of intentional discrimination, including but not limited to the following policies or practices:

    a.   Construction and maintenance of websites that are inaccessible to visually-impaired individuals, including Plaintiff;

    b.   Failure to construct and maintain websites that are sufficiently intuitive so as to be equally accessible to visually-impaired individuals, including Plaintiff; and,

    c.   Failure to take actions to correct these access barriers in the face of substantial harm and discrimination to blind and visually-impaired consumers, such as Plaintiff, as a member of a protected class.

54. Kraft therefore uses standards, criteria or methods of administration that have the effect of discriminating or perpetuating the discrimination of others, as alleged herein.

55. The ADA expressly contemplates the type of injunctive relief that Plaintiff seeks in this action. In relevant part, the ADA requires:

> "In the case of violations of . . . this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities….Where appropriate, injunctive relief shall also include requiring the . . . modification of a policy. . ."

16

(42 U.S.C. § 12188(a)(2).)

56.    Because Kraft's websites have never been equally accessible, and because Kraft lacks a corporate policy that is reasonably calculated to cause its websites to become and remain accessible, Plaintiff invokes the provisions of 42 U.S.C. § 12188(a)(2), and seeks a permanent injunction requiring Kraft to retain a qualified consultant acceptable to Plaintiff ("Agreed Upon Consultant") to comply with the ADA and make the websites accessible, utilizing the success criteria outlined in the WCAG 2.0 Guidelines as a source of reference.

57.    Plaintiff seeks that this permanent injunction require Kraft to cooperate with the Agreed Upon Consultant to:

a.  Train Kraft's employees and agents who develop the Gevalia.com and Gevalia.com/on/demandware.store/Sites-Gevalia/default/mHome-Show on accessibility and compliance with the ADA using the Success Criteria outlined in the WCAG 2.0 Guidelines as a source of reference;

b.  Regularly check the accessibility of Kraft's websites to maintain accessibility as required by the ADA using the Success Criteria outlined in the WCAG 2.0 Guidelines as a source of reference;

17

c. Regularly test end-user accessibility of the websites by screen-reader users to ensure that Kraft's website is accessible to blind and visually-impaired individuals who would access the websites with screen-reading technology; and,

d. Develop an accessibility policy that is clearly disclosed on its websites, with contact information for users to report accessibility-related problems and be provided with meaningful resolution after Kraft has investigated and identified the accessibility-related problem.

58. If Gevalia.com and Gevalia.com/on/demandware.store/Sites-Gevalia /default/mHome-Show were accessible to screen-reader users, Plaintiff and similarly situated blind and visually-impaired people could independently view coffee and other related products, customize items for purchase, shop for, and otherwise research Kraft's products available online and at retail locations.

59. Although Kraft may currently have centralized policies regarding the maintenance and operation of its websites, Kraft lacks a plan and policy reasonably calculated to make its websites fully and equally accessible to, and independently usable by, blind and other visually-impaired consumers.

60. Without injunctive relief, Plaintiff and other visually-impaired

consumers will continue to be unable to independently use the Kraft's websites in violation of their rights.

## COUNT I

## VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT

61.     Plaintiff re-alleges and incorporates by reference all paragraphs alleged above and each and every other paragraph in this Complaint necessary or helpful to state this cause of action as though fully set forth herein.

62.     Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq.*, provides:

> "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."

(42 U.S.C. § 12182(a).)

63.     The ADA requires that the place of public accommodation not discriminate in any way in which it interacts with the public, whether by selling products at a physical location or over a virtual location on the Internet.[1]

---

[1] Chief Judge Richard Posner of the Seventh Circuit Court of Appeals stated in dicta that the core meaning of the ADA's definition of discrimination is that the owner or operator of a facility, "whether in physical space or in electronic space" that is open to the public, cannot exclude disabled persons from entering the facility and using it in the same manner as do nondisabled persons. (*Doe v. Mutual of Omaha Ins. Co.*, 179 F.3d 557, 559 (7th Cir. 1999) (citing *Carparts Distrib. Ctr., Inc. v. Automotive Wholesaler's Assoc. of New England*, 37 F.3d 12, 19 (1st Cir.

64.     Kraft's website, Gevalia.com is therefore a public accommodation within the definition of Title III of the ADA, 42 U.S.C. § 12181.

65.     Gevalia.com is a service, privilege, or advantage of Kraft's online store.

66.     Gevalia.com is a service that is integrated with Kraft's online store.

67.     Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity.  (42 U.S.C. § 12182(b)(1)(A)(i).)

68.     Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals. (42 U.S.C. § 12182(b)(1)(A)(ii).)

69.     Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, among other things:

"[A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods,

1994)).  Judge Posner, expanded upon this language and stated that "[a]n insurance company can no more refuse to sell a policy to a disabled person over the Internet than a furniture store can refuse to sell furniture to a disabled person who enters the store." (*Morgan v. Joint Admin. Bd.*, 268 F.3d 456, 459 (7th Cir. 2001)).

services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; and a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

(42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).)

70.     The acts alleged herein constitute violations of Title III of the ADA, and the regulations promulgated thereunder.

71.     Plaintiff, who is a member of a protected class of persons under the ADA, has a physical disability that substantially limits the major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A).

72.     Furthermore, Plaintiff has been denied full and equal access to Gevalia.com, has not been provided services which are provided to other patrons who are not disabled, and has been provided services that are inferior to the services provided to non-disabled persons.

73.     Kraft has failed to take any prompt and equitable steps to remedy its discriminatory conduct.  These violations are ongoing.

74.     Pursuant to 42 U.S.C. § 12188 and the remedies, procedures, and

rights set forth and incorporated therein, Plaintiff, requests relief as set forth below.

**WHEREFORE,** Plaintiff prays for judgment in his favor and against Kraft, as follows:

1.  A Declaratory Judgment that, at the commencement of this action, Kraft was in violation of the specific requirements of Title III of the ADA 42 U.S.C. § 12181 *et seq.*, and the relevant implementing regulations of the ADA, for Kraft's failure to take action that was reasonably calculated to ensure that its websites are fully and equally accessible to, and independently usable by, blind and visually-impaired individuals;

2.  A preliminary and permanent injunction enjoining Kraft from further violations of the ADA, 42 U.S.C. § 12181 *et seq.*, with respect to its websites, Gevalia.com;

3.  A preliminary and permanent injunction requiring Kraft to take the steps necessary to make Gevalia.com readily accessible to and usable by blind and visually-impaired individuals;

4.  For attorneys' fees and expenses pursuant to all applicable laws including, without limitation, pursuant to 42 U.S.C. § 12188(a)(1);

5.  For compensatory damages including, but not limited to, mental anguish, loss of dignity, and any other intangible injuries suffered by the

Plaintiff as a result of Kraft's discrimination;

    6.    For prejudgment interest to the extent permitted by law;

    7.    For costs of suit; and

    8.    For such other and further relief as this Court deems just and proper.

## COUNT II

## VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT

75.    Plaintiff re-alleges and incorporates by reference all paragraphs alleged above and each and every other paragraph in this Complaint necessary or helpful to state this cause of action as though fully set forth herein.

76.    Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq.*, provides:

> "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."

(42 U.S.C. § 12182(a).)

77.    The ADA requires that the place of public accommodation not discriminate in any way in which it interacts with the public, whether by selling products at a physical location or over a virtual location on the Internet. (*See*

*Morgan v. Joint Admin. Bd.*, 268 F.3d 456, 459 (7th Cir. 2001)).

78. Kraft's website, Gevalia.com/on/demandware.store/Sites-Gevalia /default/mHome-Show, is therefore a public accommodation within the definition of Title III of the ADA, 42 U.S.C. § 12181.

79. Gevalia.com/on/demandware.store/Sites-Gevalia/default/mHome-Show is a service, privilege, or advantage of Kraft's online store.

80. Gevalia.com/on/demandware.store/Sites-Gevalia/default/mHome-Show is a service that is integrated with Kraft's online store.

81. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity. (42 U.S.C. § 12182(b)(1)(A)(i).)

82. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals. (42 U.S.C. § 12182(b)(1)(A)(ii).)

83. Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, among other things:

24

"[A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; and a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

(42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).)

84.   The acts alleged herein constitute violations of Title III of the ADA, and the regulations promulgated thereunder.

85.   Plaintiff, who is a member of a protected class of persons under the ADA, has a physical disability that substantially limits the major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A).

86.   Furthermore, Plaintiff has been denied full and equal access to Gevalia.com, has not been provided services which are provided to other patrons who are not disabled, and has been provided services that are inferior to the services provided to non-disabled persons.

87.   Kraft has failed to take any prompt and equitable steps to remedy its discriminatory conduct.  These violations are ongoing.

88.     Pursuant to 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff, requests relief as set forth below.

**WHEREFORE,** Plaintiff prays for judgment in his favor and against Kraft, as follows:

1.     A Declaratory Judgment that, at the commencement of this action, Kraft was in violation of the specific requirements of Title III of the ADA 42 U.S.C. § 12181 *et seq.*, and the relevant implementing regulations of the ADA, for Kraft's failure to take action that was reasonably calculated to ensure that its websites are fully accessible to, and independently usable by, blind and visually-impaired individuals;

2.     A preliminary and permanent injunction enjoining Kraft from further violations of the ADA, 42 U.S.C. § 12181 *et seq.*, with respect to its website Gevalia.com/on/demandware.store/Sites-Gevalia/default/mHome-Show;

3.     A preliminary and permanent injunction requiring Kraft to take the steps necessary to make Gevalia.com/on/demandware.store/Sites-Gevalia/default/mHome-Show readily accessible to and usable by blind and visually-impaired individuals;

4.     For attorneys' fees and expenses pursuant to all applicable laws

including, without limitation, pursuant to 42 U.S.C. § 12188(a)(1);

5. For compensatory damages including, but not limited to, mental anguish, loss of dignity, and any other intangible injuries suffered by the Plaintiff as a result of Kraft's discrimination;

6. For prejudgment interest to the extent permitted by law;

7. For costs of suit; and

8. For such other and further relief as this Court deems just and proper.

## COUNT III

### VIOLATIONS OF THE
### UNRUH CIVIL RIGHTS ACT, CALIFORNIA CIVIL CODE § 51 *et seq.*

89. Plaintiff re-alleges and incorporates by reference all paragraphs alleged above and each and every other paragraph in this Complaint necessary or helpful to state this third cause of action as though fully set forth herein.

90. California Civil Code § 51 *et seq.* guarantees equal access for people with disabilities to the accommodations, advantages, facilities, privileges, and services of all business establishments of any kind whatsoever. Kraft is systematically violating the UCRA, Civil Code § 51 *et seq*.

91. Kraft's online stores are "business establishments" within the meaning

27

of the Civil Code § 51 *et seq*. Kraft generates millions of dollars in revenue from the sale of goods through its Gevalia.com website. Kraft's website, Gevalia.com, is a service provided by Kraft that is inaccessible to patrons who are blind or visually-impaired like Plaintiff. This inaccessibility denies blind and visually-impaired patrons full and equal access to the facilities, goods, and services that Kraft makes available to the non-disabled public. Kraft is violating the UCRA, Civil Code § 51 *et seq.*, by denying visually-impaired customers the goods and services provided on its website, Gevalia.com. These violations are ongoing.

92. Kraft's actions constitute intentional discrimination against Plaintiff on the basis of a disability, in violation of the UCRA, Civil Code § 51 *et seq.*, because Kraft has constructed a website that is inaccessible to Plaintiff, Kraft maintains the website in an inaccessible format, and Kraft has failed to take actions to correct these barriers.

93. Kraft is also violating the UCRA, Civil Code § 51 *et seq.* because the conduct alleged herein violates various provisions of the ADA, 42 U.S.C. § 12101 *et seq.*, as set forth above. Section 51(f) of the Civil Code provides that a violation of the right of any individual under the ADA also constitutes a violation of the UCRA.

94. The actions of Kraft violate UCRA, Civil Code § 51 *et seq.*, and

Plaintiff is therefore entitled to injunctive relief remedying the discrimination.

95.     Plaintiff is entitled to statutory minimum damages pursuant to Civil Code § 52 for each and every offense.

96.     Plaintiff is also entitled to reasonable attorneys' fees and costs.

**WHEREFORE,** Plaintiff prays for judgment in his favor and against Kraft, as follows:

1.     A preliminary and permanent injunction enjoining Defendant from violating the UCRA, Civil Code § 51 *et seq*. with respect to its website, Gevalia.com;

2.     A preliminary and permanent injunction requiring Defendant to take the steps necessary to make Gevalia.com readily accessible to and usable by blind and visually-impaired individuals;

3.     An award of statutory minimum damages of $4,000 per violation pursuant to § 52(a) of the California Civil Code;

4.     For attorneys' fees and expenses pursuant to all applicable laws including, without limitation, pursuant California Civil Code § 52(a);

5.     For pre-judgment interest to the extent permitted by law;

6.     For costs of suit; and

7.     For such other and further relief as this Court deems just and

proper.

## COUNT IV

## VIOLATIONS OF THE
## UNRUH CIVIL RIGHTS ACT, CALIFORNIA CIVIL CODE § 51 *et seq.*

97.     Plaintiff re-alleges and incorporates by reference all paragraphs alleged above and each and every other paragraph in this Complaint necessary or helpful to state this third cause of action as though fully set forth herein.

98.     California Civil Code § 51 *et seq.* guarantees equal access for people with disabilities to the accommodations, advantages, facilities, privileges, and services of all business establishments of any kind whatsoever. Kraft is systematically violating the UCRA, Civil Code § 51 *et seq*.

99.     Kraft's online stores are "business establishments" within the meaning of the Civil Code § 51 *et seq*. Kraft generates millions of dollars in revenue from the sale of goods through its Gevalia.com/on/demandware.store/Sites-Gevalia /default/mHome-Show website. Kraft's mobile website, Gevalia.com/on/ demandware.store/Sites-Gevalia/default/mHome-Show, is a service provided by Kraft that is inaccessible to patrons who are blind or visually-impaired like Plaintiff. This inaccessibility denies blind and visually-impaired patrons full and equal access to the facilities, goods, and services that Kraft makes available to the

non-disabled public. Kraft is violating the UCRA, Civil Code § 51 et seq., by denying visually-impaired customers the goods and services provided on its mobile website, Gevalia.com/on/demandware.store/Sites-Gevalia/default/mHome-Show. These violations are ongoing.

100. Kraft's actions constitute intentional discrimination against Plaintiff on the basis of a disability, in violation of the UCRA, Civil Code § 51 *et seq.*, because Kraft has constructed a mobile website that is inaccessible to Plaintiff, Kraft maintains the mobile website in an inaccessible format, and Kraft has failed to take actions to correct these barriers.

101. Kraft is also violating the UCRA, Civil Code § 51 *et seq.* because the conduct alleged herein violates various provisions of the ADA, 42 U.S.C. § 12101 *et seq.*, as set forth above. Section 51(f) of the Civil Code provides that a violation of the right of any individual under the ADA also constitutes a violation of the UCRA.

102. The actions of Kraft violate UCRA, Civil Code § 51 *et seq.*, and Plaintiff is therefore entitled to injunctive relief remedying the discrimination.

103. Plaintiff is entitled to statutory minimum damages pursuant to Civil Code § 52 for each and every offense.

104. Plaintiff is also entitled to reasonable attorneys' fees and costs.

31

**WHEREFORE,** Plaintiff prays for judgment in his favor and against Kraft, as follows:

1.      A preliminary and permanent injunction enjoining Defendant from violating the UCRA, Civil Code § 51 *et seq.* with respect to its mobile website, Gevalia.com/on/demandware.store/Sites-Gevalia/default/mHome-Show;

2.      A preliminary and permanent injunction requiring Defendant to take the steps necessary to make Gevalia.com/on/demandware.store/Sites-Gevalia/default/mHome-Show readily accessible to and usable by blind and visually-impaired individuals;

3.      An award of statutory minimum damages of $4,000 per violation pursuant to § 52(a) of the California Civil Code;

4.      For attorneys' fees and expenses pursuant to all applicable laws including, without limitation, pursuant California Civil Code § 52(a);

5.      For pre-judgment interest to the extent permitted by law;

6.       For costs of suit; and

7.      For such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands trial by jury.


Dated: February 20, 2017                    *Respectfully submitted,*

                                            */s/ Rusty A. Payton*
                                            Rusty A. Payton [Lead Trial]
                                            Marc E. Dann
                                            PaytonDann
                                            115 S. LaSalle Street, Suite 2600
                                            Chicago, Illinois 60603
                                            (312) 702-1000
                                            (312) 702-1000 (fax)
                                            payton@paytondann.com
                                            mdann@dannlaw.com
                                            *Counsel of Record for Plaintiff*
                                            *Guillermo Robles*

                                            Joseph R. Manning, Jr.
                                            *Pro Hac Admission to be sought*
                                            Caitlin J. Scott
                                            *Pro Hac Admission to be sought*
                                            4667 MacArthur Blvd, Suite 150
                                            Newport Beach, CA 92660
                                            Tel: (949) 200-8755
                                            cscott@manninglawoffice.com
                                            www.manninglawoffice.com